

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PRESIDENT AND FELLOWS )
OF HARVARD COLLEGE, )
)
E.I. DU PONT DE NEMOURS AND CO., )
)
    Plaintiff, )
)
v. )   Civil Action No.: 1:12-cv-1034
)
TERESA STANEK REA, Acting Under )
Secretary of Commerce for Intellectual )
Property and Acting Director of the United )
States Patent and Trademark Office )
)
    Defendant. )

## MEMORANDUM OPINION

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkts. No. 21, 23). Plaintiffs President and Fellows of Harvard College ("Harvard") and E.I. Du Pont De Nemours and Co. ("Du Pont") (collectively "Plaintiffs") brought this action under the Administrative Procedure Act ("APA"), claiming that Defendant United States Patent and Trademark Office ("USPTO") improperly determined that their patent, U.S. Patent No. 5,925,803 ("Subject Patent") had expired and, therefore, improperly refused to enter certain claims during the reexamination of the patent. Defendant opposes Plaintiffs' motion for summary judgment and filed a cross-motion for summary judgment, which Defendant opposes. A hearing was held before this Court on April 19, 2013.

### I. BACKGROUND

On April 12, 1988, Harvard was granted a patent entitled "Transgenic non-human mammals," U.S. Patent No. 4,736,866 ("Grandparent Patent"), which expired after 17 years on

1

April 12, 2005. On March 22, 1988, Harvard filed a divisional patent application, U.S. Patent No. 5,087,571 ("Parent Patent") to the Grandparent Patent, but in November 1988 the USPTO issued an office action rejecting certain claims in the application for obviousness-type double patenting. The USPTO cited the Grandparent Patent, finding that the Parent Patent claims were already found in the Grandparent Patent.

The Parent Patent application was then assigned to a different examiner. Attempting to cure the original examiner's rejection, Harvard submitted additional materials, including a terminal disclaimer, claim amendments, additional arguments, and a declaration by one of the inventors. (Ex. 19 at A254-A267 and A303-304). The most critical consideration before the Court concerns the terminal disclaimer that Harvard filed in response to the rejection.

A.  Terminal Disclaimer

The terminal disclaimer Harvard submitted on November 10, 1989, stated that Harvard, "the owner of the entire interest in the [Parent Patent] application"

> hereby disclaims any portion of any patent granted on the [Parent Patent] application or on any application which is entitled to the benefit of the filing date of the [Parent Patent] application under 35 U.S.C. § 120 not extending the term of any patent granted on that application beyond the term of [the Grandparent Patent] issued April 12, 1988.

Admin. Record at A114. In addition, the terminal disclaimer states that the applicant intended that it "run with any patent so granted" and is binding on any of its successors or assignees, such as Du Pont. *Id.* Finally, the disclaimer states, "Accompanying this disclaimer is the fee set forth in 37 C.F.R. § 1.20(d)."[1] Admin. Record at A115. Notably, at the time of the filing, the USPTO provided a terminal disclaimer template for applicants to fill out with their information.

---

[1] Harvard's submission that included the terminal disclaimer also included general instructions authorizing USPTO to charge Harvard's account to pay any filing fees. "Please charge any fees to Deposit Account No. 06-XXXX." Admin. Record at A262.

2

Nonetheless, Harvard chose to draft its own terminal disclaimer rather than use the standard form. The only difference in substance was that the standard form did not mention any downstream applications that might claim the same priority filing date, whereas Harvard's disclaimer expressly states that it applies to "any application which is entitled to the benefit of the filing date" of the subject application. Admin. Record at A114.

Ultimately, the terminal disclaimer was signed, sealed, and dated by Harvard's official agent and director and filed with the USPTO. Upon receipt of the pleadings and statements, the USPTO recorded the terminal disclaimer in the official prosecution history of the Parent Patent, where it remains today. At no time has Harvard or its assignees attempted to withdraw the disclaimer. Following Harvard's supplemental filings, the new examiner withdrew the then-pending rejections "in view of Applicants' arguments, amendments to the claims and the Rule 132 Declaration." Dkt. No. 20, Ex. 1 at A2.

### B. Administrative Proceedings

In April 2010, a third party requested a reexamination of Harvard's Subject Patent, U.S. Patent No. 5,925,803, claiming that the Subject Patent had expired in 2005 due to the terminal disclaimer. On June 7, 2010, the USPTO granted the request for *ex parte* reexamination of the Subject Patent. The USPTO took the position that several references cited by the third party raised substantial questions of patentability. Ultimately, the USPTO examiner issued a non-final Office Action in October 2010, rejecting claims 1-3 in the Subject Patent and alleging that the patent had expired on April 12, 2005 due to the terminal disclaimer. The patent was found unpatentable due to obviousness-type double patenting. Harvard responded to the Office Action on December 21, 2010, adding dependent claims 4-10, arguing that claims 1-3 should not have been rejected and that the Subject Patent had not expired.

On April 2, 2011, the USPTO examiner issued a Notice of Intent to Issue Reexamination Certificate, in which she withdrew all of the previously entered claim rejections. The examiner refused, however, to enter Harvard's proposed amendment to add claims 4-10. She explained that the amendment did not comply with 37 C.F.R. § 1.530(j), which provides that "no amendment, other than the cancellation of claims, will be incorporated into [a reexamined patent] by certificate issued after the expiration of the patent." Having found that the Subject Patent had expired due to the terminal disclaimer, the examiner rejected Harvard's claims 4-10.

On May 5, 2011, Harvard petitioned the USPTO to review its decision, claiming there was no legal basis for the examiner's claim that the Parent Patent had expired. Harvard argued that the terminal disclaimer had no legal effect upon the term of the Parent Patent. Specifically, they claimed that (1) the patent made no mention of the terminal disclaimer, (b) no terminal disclaimer was even mentioned during the patent's prosecution, and (c) the terminal disclaimer was not entered in the Parent Patent application. Admin. Record at A232-A233. Harvard also submitted supplemental material to its petition, claiming that the terminal disclaimer was never effective because Harvard had not paid the statutorily required filing fee, pursuant to 35 U.S.C. § 253.

On July 11, 2011, the USPTO Director issued a decision affirming the examiner's decision that the patent had expired. Harvard then filed a request for reconsideration of its petition and requesting that the agency withdraw or vacate the Reexamination Certificate, reopen reexamination, and direct claims 4-10 be entered. *See* Admin. Record at A315-A331. On June 12, 2012, the USPTO issued its final decision, holding that the 1989 terminal disclaimer was valid and that the Subject Patent had expired.

As part of its final decision, the USPTO rejected Harvard's argument that the agency had not relied on the disclaimer in prosecuting the Parent Patent, finding that the evidence from the record was "inconclusive." The agency also determined that Harvard had never attempted to withdraw the disclaimer, so it remains part of the official, public administrative record of the Parent Patent. Finally, the USPTO rejected Harvard's claim that the terminal disclaimer could not be effective because the filing fee was never paid.

Harvard appealed the USPTO's final decision by instituting this civil action under the Administrative Procedures Act on September 14, 2012.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must go beyond the pleadings and mere allegations to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 323. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis original). Indeed, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

### B. Administrative Procedures Act Review

The Administrative Procedure Act ("APA") provides an additional standard for cases involving a final agency action, such as the decision before the Court from the USPTO. *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999). Under the APA, an agency action may be set aside if the court finds that the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Ultimately, the Court should grant summary judgment if the moving party has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

When a party seeks review of agency action under the APA before a district court, the district judge sits as an appellate tribunal. The entire case on review is a question of law, and the complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action. The district court's review must be based on the administrative record and is limited to determining whether the agency acted arbitrarily or capriciously. *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009). The burden of showing the agency action was arbitrary and capricious lies with the plaintiff. *See Ohio Valley Environmental Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009).

### III. ANALYSIS

Plaintiffs contend that the USPTO acted arbitrarily and capriciously when it refused to grant claims 4-10 of the Subject Patent. Plaintiffs' arguments rest entirely within the administrative record, which they claim demonstrates that the terminal disclaimer was never relied upon by the USPTO during the prosecution of the prior patents, and should not have been relied upon because it was not an effective terminal disclaimer as defined by 35 U.S.C. § 253. The USPTO challenges Plaintiffs' contentions by claiming that the terminal disclaimer was effectively recorded, thus becoming part of the official record for the Parent Patent.

Furthermore, the USPTO claims that the disclaimer was relied upon during the reexamination of the Subject Patent.

A.   **The Recorded Terminal Disclaimer**

Plaintiffs' primary argument rests on their representation that the filing fee that must accompany any terminal disclaimer was never paid. Under 35 U.S.C. § 253,

> (a) A patentee...may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such a disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him.
>
> (b) In the manner set forth in subsection(a), any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.

It is undisputed that Harvard intentionally filed the terminal disclaimer in writing and that it was effectively recorded by the USPTO in the Parent Patent file. Harvard argues nonetheless that the USPTO's inability to locate a document in the file proving that the filing fee was recorded is a fatal flaw, and that failure to pay the statutory filing fee left the § 253 statutory requirements unsatisfied. The disclaimer, therefore, is a nullity and the USPTO's reliance on it is arbitrary and capricious.

In furtherance of their position, Plaintiffs direct the Court's attention to the fact that every document in the Parent Patent's file contained the USPTO stamp, which indicates when payments were made and when documents were recorded, except the terminal disclaimer, which bore no such markings. Harvard also claims that searching back through 25 years of transactions, it was unable to determine if its account had been debited the proper amount, or at all, for the

7

terminal disclaimer filing fee.[2] Similarly, the USPTO is unable to account for any cancelled checks or other definitive evidence that the filing fee was paid.[3] Finally, Plaintiffs argue that the fact that the USPTO's table of contents for the file history of the Parent Patent lists all documents except for the terminal disclaimer is evidence that the disclaimer was not effectively recorded under § 253.

In response to Plaintiffs' arguments that the terminal disclaimer was never relied upon by the examiners, the USPTO relies on *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379 (Fed. Cir. 1998). In that case, the plaintiff filed a terminal disclaimer, and it was received and added to the file wrapper of the relevant patent; however, it was not entered on either the cover page or the contents page of the file wrapper. The USPTO also failed to publish the disclaimer, as required by regulation 37 C.F.R. § 1.321(a). *Id.* at 1381. Nonetheless, the court held that the validity of the disclaimer "is not dependent upon actions taken by the PTO," and that nothing in the statutes or regulations requires any action by the USPTO in order for a disclaimer to be effectively recorded. *Vectra Fitness* also finds the USPTO's similar error in not documenting the disclaimer in the table of contents of the file wrapper is not relevant to the disclaimer's effectiveness.

The USPTO also addresses Plaintiffs' claims that they did not pay the filing fee, citing the doctrine of the presumption of regularity. *See Almy v. Sebelius*, 679 F.3d 297, 309 (4th Cir. 2012). Under the presumption of regularity doctrine, the official acts of an agency are supported in the absence of clear evidence to the contrary and courts presume that the public officers have

---

[2] Harvard admits that is has no evidence that the fee was not paid by some method other than a check. Plaintiffs acknowledge that the relevant evidence related to deposit account disbursements is no longer available and it "could not determine from PTO whether any charges related to the terminal fee...were made" by deposit account. Admin. Record at A245-46.
[3] USPTO does not maintain financial records earlier than 1997. *See* Admin. Record at A245-46.

8

properly discharged their official duties. *Id.* (citing *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926)). The USPTO argues that it is the regular practice of the agency to record terminal disclaimers only once the filing fee has been paid, as required under § 253, and that absent clear evidence that the agency broke from its regular practice, the court must assume the USPTO acted in accordance with the regulations and recorded the disclaimer only once the fee was paid.

Ultimately, the USPTO's review of this controversy concluded that the evidence concerning payment of the filing fee was "inconclusive." Nonetheless, the USPTO determined that based on the evidence and standard practices, the filing fee was paid and the disclaimer was effective under § 253. The agency argues, and the Court recognizes and finds that the lack of conclusive evidence concerning the payment of the fee allows the agency to conclude the fee was paid, based on Harvard's representation that it had paid the fee, the statements contained on the face of the disclaimer, the instructions to debit a particular deposit account, the presumption of regularity, and the fact that the examiner withdrew its objections to the patent only after the disclaimer was filed. This factual determination is not arbitrary or capricious or contrary to the law.

**B.    Equity**

In the alternative, if the USPTO's factual determination that the filing fee had been paid in satisfaction of § 253 is not entitled to deference, principles of equity require a finding in favor of the agency. Under the doctrine of laches, a defendant may not be liable where there was an unreasonable or inexcusable delay in plaintiff's bringing the case before the court and that delay prejudiced the defendant. *White v. Daniel*, 909 F.2d 99 (4th Cir. 1990). Equitable principles require that the plaintiff bring the action within a reasonable time after plaintiff discovers facts

giving rise to the cause of action. *Id.* The delay may also be measured, however, from either the time those facts were learned or could have been discovered with reasonable diligence. *Id.*

In this case, Harvard filed the terminal disclaimer more than twenty years ago and never sought to have it removed from the public file wrapper. Plaintiffs argue before this Court that they had not discovered the disclaimer until the USPTO rejected their latest claims. Cutting against Plaintiff's representations, however, is the fact that the terminal disclaimer was part of the publicly accessible record for the Parent Patent. The terminal disclaimer is recorded so that it may be publicly available for anyone studying the patent. Defendant's argument that it had no notice of the disclaimer's effects or that it could not have reasonably discovered the terminal disclaimer until recently is without merit, especially since they filed it. In the interests of equity, Plaintiffs cannot now disavow the terminal disclaimer due to its own alleged clerical mistake after having waited more than two decades.

## IV. CONCLUSION

Having reviewed the USPTO's legal conclusions *de novo* and having found the agency's factual findings were not arbitrary or capricious, Defendant USPTO is entitled to summary judgment.

For the reasons stated herein and for good cause shown, it is hereby

ORDERED that Defendant Teresa Stanek Rea's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

The Clerk shall enter judgment pursuant to Fed. R. Civ. P. 56.

May 15, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge